UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEROY JETER, JR., | ) | Case No. 5:07CV1232 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION AND ORDER** |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Leroy Jeter, Jr. ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue, Commissioner of Social Security ("Defendant") denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income. ECF Dkt. #1.  Plaintiff asserts that the Administrative Law Judge ("ALJ") lacked substantial evidence to find that he retained the residual functional capacity ("RFC") to perform light work existing in the economy because the ALJ failed to fully and fairly develop the record and failed to include all of Plaintiff's limitations in the hypothetical questions posed to the vocational expert ("VE").

For the following reasons, the Court reverses and remands this case for the ALJ to fully and fairly develop the record relating to whether Plaintiff's conditions, individually or in combination, meet or equal a Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ shall also fully and fairly develop the record regarding the taking of  VE testimony as he failed to explain to the pro se Plaintiff the purpose of the VE, the meaning of the hypothetical person, and the ability of Plaintiff to

present hypothetical questions to the VE.

I.  **PROCEDURAL HISTORY**

On February 26, 2004, Plaintiff filed applications for DIB and SSI alleging disability beginning July 2, 2001 due to severe uncontrolled hypertension, hypertensive cardiomyopathy and chronic pulmonary obstructive disease ("COPD"). Tr. at 20, 24, 39-42, 53-62, 191-195. After the agency denied his applications initially and on reconsideration, Plaintiff requested a hearing before an ALJ. *Id.* at 20-25, 193-201. A hearing before an ALJ was held on February 24, 2006, where Plaintiff waived his right to counsel and Plaintiff, a medical expert, Dr. Steven LaViola ("ME") and VE Ms. Susan Moranda, ("VE") testified. *Id*. at 203-239.

On October 24, 2006, the ALJ found that Plaintiff was not disabled and therefore not entitled to DIB or SSI. Tr. at 11-18. Plaintiff filed a request for review of the ALJ's decision and the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. *Id.* at 4-7.

II.  **RELEVANT PORTIONS OF THE HEARING BEFORE THE ALJ**

At the February 24, 2006 videoconference hearing before the ALJ who was located in Stockton, California, Plaintiff appeared by video from Cleveland, Ohio and ME LaViola and VE Moranda appeared by telephone. Tr. at 203-204. Plaintiff testified, as did the ME and VE. *Id.* The ALJ informed Plaintiff of his right to be represented by counsel at the hearing and Plaintiff waived that right. *Id.* at 204.

Plaintiff testified that he was fifty-three years old at the time of the hearing and forty-nine years old at the time of the alleged onset of his disability. Tr. at 190, 207. He attended school through the tenth grade and thereafter earned his GED. *Id*. at 208. He had received training as a production machine operator and earned a certificate. *Id.*

Plaintiff indicated that he stopped working in July of 2000 after he was laid off as a grinder/general maintenance person. *Id*. at 215. He had worked for this company since 1997 and had prior employment performing odd jobs from 1994 through 1997 and performed general maintenance like the 1997 job from 1988 to 1997. *Id.* at 211.

When the ALJ asked him why he could not return to any of these prior jobs, Plaintiff responded, "Well, there's no jobs left where I live at." Tr. at 215. The ALJ then followed up by asking if Plaintiff had any pain in any part of his body and Plaintiff answered, "I have extremely high blood pressures[sic] that they can't seem to control it and I have a little trouble breathing. I just got over a case of pancreatitis so - -." *Id.* The ALJ asked Plaintiff why he chose July 2001 as his beginning date of disability and Plaintiff responded, "Well, that when I got laid off from work." *Id.* at 217.

Plaintiff indicated that he did not drive, although he had a driver's license, and he stated that he took care of his mother. Tr. at 223. He told the ALJ that he was no longer smoking and was using a nicotine patch. *Id*. He identified his primary medical clinic as Aultam Clinic, stating that he saw an "Indian" doctor there but he could not pronounce her name. *Id*. He indicated that he had been seen at this clinic about six times in the last twelve months and had been seeing the particular doctor there for two years. *Id.* He stated that he had just met with that doctor the day before the hearing and she prescribed medication for him. *Id*. He further testified that she told him not to exert himself "too much" and to take his medications so that his blood pressure would not "go sky high." *Id.* at 224-225. He also told the ALJ that he had been to the emergency room twice in the last twelve months and had been inpatient at a hospital three times in the last twelve months. *Id*. at 225. He estimated that he was kept in the hospital for two days on one occasion, thirteen days on another occasion, and two weeks

3

on the third occasion. *Id*. He also stated that he attended blood pressure meetings twice a month. *Id.* He had also served three years in prison from 1983 through 1986 for aggravated drug trafficking and counterfeit drugs. *Id.* at 226.

Plaintiff estimated that he could stand for approximately twenty minutes to a half-hour and he could sit for one to two hours at a time. Tr. at 226. He could walk about four city blocks, dress himself, and had no problems reaching in front of him, but did have problems reaching overhead on the right due to a prior surgery. *Id*. at 227.

At the conclusion of the hearing, when the ALJ asked if Plaintiff wished to tell him anything that was not already addressed, Plaintiff responded:

> A  Only that I'm just having problems breathing and I can't control this blood pressure. They gave me three or four types of variations of pills but it just can't seem to get it under control - -
>
> Q  Uh-huh, okay.
>
> A  - - and, you know, sometimes it will affect the way I feel. If I don't take the medication, you know, I have problems.
>
> Q  Well, you better keep up with your medication then.
>
> A  Well, I was. They just denied me my medical assistance so I don't know what I'm going to do after that.
>
> Q:  Well, I don't have any suggestions because I'm not in Michigan or Ohio rather.
>    Cleveland is still in Ohio, isn't it?

Tr. at 231-232.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability and supplemental security insurance benefits. These steps are:

> 1.  An individual who is working and engaging in substantial gainful activity will

4

> not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));
>
> 2. An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R. 404.1520©) and 416.920(c)(1992));
>
> 3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));
>
> 4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The Plaintiff has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.  RELEVANT PORTIONS OF THE ALJ'S DECISION

In the ALJ's decision, he proceeded through the steps for the entitlement to social security benefits, first finding that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. Tr. at 12. He also found that Plaintiff had the severe impairments of heart disease and hypertension, but neither of these impairments met or equaled a Listing. *Id*. at 17. He discounted Plaintiff's credibility relating to his complaints of pain and capabilities and assessed that Plaintiff could perform light work with diminished, correctable vision, slight limitation in the ability

5

to reach overhead, and could perform simple, routine, competitive tasks. *Id*. at 15. Based upon this RFC, and the VE's testimony, the ALJ found that Plaintiff was not disabled because a significant number of jobs existed in the economy that Plaintiff could perform. *Id*. at 16.

## **V.     STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is based upon the record taken as a whole. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365 (6th Cir. 1984). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532.

This Court can remand a case to the Commissioner under sentence four of 42 U.S.C. § 405(g), sentence six of 42 U.S.C. § 405(g), or under both of these sections. Sentence four provides that a district court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A sentence-four remand provides the required relief in cases where there is insufficient evidence on the record to support the Commissioner's conclusions and

6

further factfinding is necessary. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994), citing *Sullivan v. Finkelstein*, 496 U.S. 617, 625-26 (1990). "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986), citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551 (6th Cir. 1984).

An ALJ's decision may be reversed and benefits immediately awarded only if the record adequately establishes a plaintiff's entitlement to benefits. *Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994). The decision to deny benefits can be reversed and benefits immediately awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *Faucher*, 17 F.3rd 171, 176 (6th Cir. 1994). Where further factual issues remain, the case should be remanded for further factfinding. *Id.*

## VI. ANALYSIS

### A. DEVELOPMENT OF THE RECORD BY THE ALJ

Plaintiff first asserts that the ALJ failed to fully and fairly develop the record in his case because he was unrepresented by counsel and little medical evidence existed in the record upon which to base a disability determination. ECF Dkt. #14 at 7. He contends that although he waived his right to legal representation, the ALJ failed to fulfill his duty of probing into the relevant facts as required by *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1106, 1111 (6th Cir. 1983). *Id.*

Plaintiff is correct that while he has the ultimate burden of proving by sufficient evidence that he is entitled to disability benefits, 42 U.S.C.A. § 423(d)(5), an ALJ has a heightened duty to develop the record under special circumstances, such as when a claimant is not represented, is not capable of presenting an effective case, and is unfamiliar with hearing procedures. *Nabours v. Comm'r of Soc. Sec.*, 50 Fed.Appx. 272, 275, 2002 WL 31473794 (6th Cir. 2002), unpublished, citing *Duncan v. Sec'y*

7

*of Health & Human Servs.,* 801 F.2d 847, 856 (6th Cir. 1986) and *Lashley v. Sec'y of Health & Human Servs.,* 708 F.2d 1048, 1051-1052 (6th Cir. 1983).  An ALJ has a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," when the claimant is unrepresented at the hearing.  *Lashley,* 708 F.2d at 1052-1053.  The ALJ must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.*  No bright line test exists for determining when the ALJ has assumed the role of counsel or failed to fully develop the record.  *Id.*  The Sixth Circuit has cautioned that the determination "of whether an ALJ has failed fully to develop the record in derogation of this heightened responsibility must be determined on a case-by-case basis, and that it is clear that a claimant may waive his right to counsel." *Nabours*, 50 Fed.Appx. at **3, citing *Duncan*, 801 F.2d at 856 and *Lashley*, 708 F.2d at 1052.

In the instant case, the record shows that Plaintiff waived his right to representation after the ALJ informed him of the right to counsel or other representation and indicated that paperwork had been mailed to him regarding his right to representation.  Tr. at 204.  However, the Court finds that the ALJ failed to fully and fairly develop the record as to Plaintiff's medical records, whether Plaintiff's conditions met or equaled a listed impairment, and his explanation to the pro se Plaintiff of the VE's testimony, the use of hypothetical persons, and the right to question the VE.

First, Plaintiff clearly testified at the hearing as to his recent medical treatment, informing the ALJ that he had been seeing a doctor whose name he could not pronounce at Aultman Clinic over the last two years and six times in the last twelve months.  *Id*.  He stated that he had just met with that doctor the day before the hearing and she prescribed medication for him.  *Id*.  He further testified that she told him not to exert himself "too much" and to take his medications so that his blood pressure would not "go sky high."  *Id.* at 224-225.  He also told the ALJ that he had been to the emergency room twice in the last twelve months and had been inpatient at a hospital three times in the last twelve

8

months. *Id*. at 225. He estimated that he was kept in the hospital for two days on one occasion, thirteen days on another occasion, and two weeks on the third occasion. *Id*.

However, very little medical records from 2005 or 2006 are in Plaintiff's file. An Aultman Hospital report in the file from 2005 indicates that Dr. Gudena from Aultman Health Foundation was Plaintiff's family physician. *Id*. at 172. This is the same doctor that Plaintiff had identified as his most recent treating physician in his SSA Form 3441-BK. Tr. at 79. However, there are no recent records or notes from Dr. Gudena. Further, a February 11, 2005 note by an Aultman nurse indicated that Plaintiff had been discharged from the hospital recently after an eleven-day stay at "MMC." *Id*. at 174. Yet, no hospital records are in the file from this time period. A quick review of the few medical records in the file should have put the ALJ on notice that medical evidence was missing. The ALJ acknowledged during the hearing that records were missing from the file. *Id*. at 206. Yet, when Plaintiff offered to attempt to get more records after he stated that he sent everything that he was told to send, the ALJ went ahead and made findings based upon the little medical evidence in the record. *Id*. at 267.

For instance, the discussion between the ALJ and the ME, Dr. LaViola, and Plaintiff and the ALJ shows the ALJ's lack of follow-up. Tr. at 7-8. The ME appeared by telephone and the relevant portions of the brief conversation between the ALJ, the ME, and Plaintiff follow:

> Q[ALJ]: Have you had an opportunity to review the medical records of Leroy Jeter?
>
> A [ME]: Yes.
>
> Q: And, based on your experience and knowledge of the regulations and your examination of the records, does Mr. Jeter equal any of the listings?
>
> A: At this time, based on the scarcity of information, I cannot say that.

9

| | |
|---|---|
| Q: | Okay. |
| A: | Okay. |
| Q: | So, due to lack of medical records, he does not? |
| A: | Yes. |
| ALJ: | Okay. Do you have any questions, Mr. Jeter? |
| CLMT [Plaintiff]: | I couldn't understand what he said. |
| ALJ: | Okay. He said that, based on the limited number of medical records that have been submitted, he can't make a determination of whether or not you equal any of the listings, okay? |
| CLMT: | Well, they had told me to send my medical records to, what's that, Stockton, California. I sent all the records that they gave me. |
| ALJ: | Yes. We've got them. There just aren't enough of them. |
| ME: | You see, the problem here, Judge, is that he hasn't been to the doctor anymore and we don't, I have no feeling as to, you know, the status of his heart. |
| ALJ: | When was the last time you visited your heart doctor? Do you know? |
| CLMT: | It was a couple months ago. |
| ALJ: | Okay. Apparently we don't have those records so the doctor can only - - |
| CLMT: | I sent them everything they told me to send them, so, you know - - |
| ALJ: | Okay. |
| CLMT: | - - if I have to get more, maybe I could get more. I don't know. |
| ALJ: | All right. |
| CLMT: | I guess that's why I'm here today. |
| ALJ: | Well, based on the medical records today, you don't meet any of the listings so I'm going to go ahead and let the doctor go. Okay? |

10

   CLMT:  All right.

Tr. at 206-207.

  Based upon the above testimony, the ME was unable to form an opinion as to whether Plaintiff's conditions met or equaled a listing because of insufficient medical evidence in the file. Accordingly, the ALJ lacked sufficient evidence upon which to base his finding that Plaintiff's conditions did not meet or equal a listed impairment. The ALJ explained to Plaintiff at the hearing that the ME was unable to make such a determination, yet he told Plaintiff that he was finding that Plaintiff's conditions did not meet or equal any of the listings "based on the medical records today." *Id.* at 207. He also indicated in his decision that the ME "testified that the claimant's impairments do not meet or equal any impairment in the Listing of Impairments, either singly or in combination." *Id.* at 14. Further, the ALJ made this finding despite the ME's emphasis in his testimony that he was unsure about the status of Plaintiff's heart condition and the ALJ's own acknowledgment that the medical records from Plaintiff's recent visit to his heart doctor were missing from the file. *Id.* at 13, 206. Without an opinion by the ME and with his own acknowledgment of missing medical records, substantial evidence does not support the ALJ's finding that Plaintiff's severe heart impairment did not meet or equal a listed impairment and the ALJ failed to fully and fairly develop the record relating to Plaintiff's heart condition.

  In addition, the conversation between the ALJ and Plaintiff with regard to the VE's testimony also shows the ALJ's failure to fully and fairly develop the record. Plaintiff clearly expressed his inability to understand the VE's role at the hearing, the conversations between the VE and the ALJ, and the basic terms relating to the hypotheticals presented to the VE by the ALJ. For instance, after the ALJ presented four hypothetical questions to the VE with differing RFCs at the hearing, the ALJ asked Plaintiff:

11

| | |
|---|---|
| ALJ: | Do you have any questions or hypotheticals you wish to pose to Ms. Moranda? |
| CLMT: | Are you referring to me? |
| ALJ: | Yes. |
| CLMT: | I don't understand those hypothetical things you're talking about, SRD or, you know, what do you mean by that? |
| ALJ: | SRT stands for simple, routine, repetitive tasks.  Okay? |
| CLMT: | Okay? |
| ALJ: | A simple, routine, repetitive task.  Like somebody who would put donuts in a box all day.  I mean, that would be a simple, routine, repetitive task.  What else? |
| CLMT: | Nothing else. |

While the ALJ is not supposed to act as counsel for a claimant, *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.E.2d 842 (1972), the ALJ in this case did not provide sufficient explanation to Plaintiff regarding the hypothetical questions that he presented to the VE.  He did not explain what these hypotheticals were, their purpose, or the information upon which they were based.  Further, he failed to inform Plaintiff that he could question the VE about the hypothetical questions that the ALJ posed or he could present hypothetical questions of his own.

Further supporting the ALJ's failure to fully and fairly develop the record is the conversation had between he and Plaintiff at the end of the hearing. ALJ:

| | |
|---|---|
| ALJ: | All right.  You're sure we've got all the medicals? |
| CLMT: | As far as I know. |
| ALJ: | Okay.  I don't know whether we do or not.  I'm assuming you went down there and looked at the medicals.  I don't know, but we've got all that we've got here so I don't know whether you've got - - whether we got them all- - |

12

> CLMT: Well, I gave you - - I've sent you what they gave me.
>
> ALJ: Okay. Well, then, I guess that's all of them?
>
> CLMT: I guess so.

Tr. at 233-238. Despite the earlier conversation at the hearing where Plaintiff informed the ALJ of recent medical treatment and hospital stays, the ALJ nevertheless at the end of the hearing noted his uncertainty as to whether all of the records were in the file and then finally "guessed" that all of the medical records were in Plaintiff's file. He thereafter made a disability determination based upon the few outdated records in the file. Since the ALJ was informed of recent treatment by Plaintiff, acknowledged that records relating to recent treatment were missing from the file, and was told that a medical expert opinion could not be articulated because of a lack of medical records and particularly recent medical records, the ALJ lacked substantial evidence upon which to make his disability determination.

For these reasons, the Court finds that the ALJ failed to fully and fairly develop the record relating to Plaintiff's heart impairment, recent treatment and hospital stays, and the questioning and testimony of the VE. The Court accordingly remands this case for further factfinding and explanation by the ALJ, perhaps with the aid of a consultative physician and requests for additional medical records from Plaintiff's medical sources.

### B.   LIMITATIONS POSED TO VE BY THE ALJ

Plaintiff additionally asserts that the ALJ failed to include all of his limitations in the hypothetical questions that he presented to the ALJ. ECF Dkt. #14 at 10. The Court need not address this issue at this time since this case is remanded to the ALJ for more complete development of the record relating to Plaintiff's impairments and the VE testimony.

### VII.  CONCLUSION

Based upon a review of the record, the undersigned reverses and remands the instant case as

the ALJ failed to fully and fairly develop the record relating to Plaintiff's heart impairment, the medical records relating to his most recent treatment and hospital stays, and questioning of the VE after this information is obtained. Should Plaintiff appear pro se before the ALJ again for a hearing, the ALJ shall inform him of the role of a VE, and explain to him the use of hypothetical questions and his right to question the VE.

**IT IS SO ORDERED.**

Dated: August 29, 2008  */s/George J. Limbert*
GEORGE J. LIMBERT
U.S. MAGISTRATE JUDGE